UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NEXT LEVEL PLANNING & WEALTH MANAGEMENT, LLC,

    Plaintiff,

v.                                                 Case No. 18-MC-65

PRUDENTIAL INSURANCE COMPANY OF AMERICA and
PRUCO SECURITIES LLC,

    Defendants.

## ORDER DENYING PETITION TO ENFORCE ARBITRATOR'S SUBPOENA

### 1. Facts and Procedural History

On November 19, 2018, Next Level Planning & Wealth Management, LLC initiated this action by way of a complaint seeking declaratory judgment that a subpoena issued by a Financial Industry Regulatory Authority (FINRA) arbitrator at the request of Prudential Insurance Company of America and Pruco Securities, LLC (referred to collectively as Prudential) is invalid. (ECF No. 1.)

According to Next Level's complaint, "Daniel Fleming and Patrick Maddox were previously affiliated with Prudential and were Registered Representatives of Pruco, but ended their affiliation with Prudential on or about October 13, 2017." (ECF No. 1, ¶ 10.)

"Fleming and Maddox thereafter became affiliated with Next Level and are presently registered representatives of LPL Financial, LLC, the broker-dealer for Next Level." (ECF No. 1, ¶ 11.) "While Fleming and Maddox were affiliated with Prudential, they entered into agreements with Prudential that included restrictions on their ability, after ending their affiliation with Prudential, to solicit customers of Prudential that they serviced or had contact with during their affiliation with Prudential, or to induce or attempt to induce persons associated with Prudential to terminate their affiliation with Prudential." (ECF No. 1, ¶ 15.) These agreements included a provision that disputes be settled by arbitration before FINRA. (ECF No. 1, ¶¶ 16-17.)

"On October 30, 2017, Prudential filed a Statement of Claim initiating an arbitration proceeding before FINRA against Fleming, Maddox and Next Level." (ECF No. 1, ¶ 20.) However, Next Level is not subject to FINRA and has refused to consent to its jurisdiction. (ECF No. 1, ¶¶ 21-23; *see also* ECF No. 1-8.)

"On or about November 2, 2018, Next Level received a non-party Subpoena Duces Tecum, which was issued by an arbitrator in the FINRA Arbitration issued at Prudential's request." (ECF No. 1, ¶ 24; *see also* ECF No. 1-1.) Next Level asks the court to quash the subpoena. (ECF No. 2.) It argues that the subpoena is not authorized under Section 7 of the Federal Arbitration Act (FAA). It also argues that the subpoena is overbroad and imposes an undue burden on it. Prudential filed a cross motion to enforce the subpoena. (ECF No. 9.)

2

On February 23, 2019, the Honorable Pamela Pepper referred the parties' motions to this court for resolution. (ECF No. 12.)

## 2. Subject Matter Jurisdiction

Ordinarily, an action regarding the enforcement of an arbitrator's subpoena would arise under § 7 of the Federal Arbitration Act, 9 U.S.C. § 7. But an action under § 7 may be filed only by the party seeking to enforce the subpoena and only then in "the district in which such arbitrators, or a majority of them, are sitting …." 9 U.S.C. § 7. But Next Level, as the respondent to the subpoena, is not seeking to enforce the subpoena. Rather, it seeks a declaration that the subpoena is invalid.

Noting that the subpoena was issued out of Chicago and that other documents suggested that the underlying arbitration was venued in Chicago (ECF Nos. 1-1 at 1; 14-1 at 1; 14-2 at 1), the court held oral argument in part to address the locale of the arbitration. (ECF No. 16.) At the hearing the court was informed that the arbitration is scheduled to occur in this district. (ECF No. 16.) Therefore, the court is satisfied that venue is proper in this district regardless of whether it is construed as an action for declaratory judgment or to enforce an arbitration subpoena.

However, neither the Declaratory Judgement Act, *DeBartolo v. HealthSouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009), nor the Federal Arbitration Act, *Amgen, Inc. v. Kidney Ctr.*, 95 F.3d 562, 567 (7th Cir. 1996), independently confers jurisdiction on a federal court. Thus, notwithstanding the provision in 9 U.S.C. § 7 stating that actions to enforce

arbitration subpoenas may be filed "in the United States district court for the district in which such arbitrators, or a majority of them, are sitting," a federal court still needs an independent basis for subject matter jurisdiction to enforce such a subpoena. *Stolt-Nielsen Transp. Grp., Inc. v. Celanese AG*, 430 F.3d 567, 572 (2d Cir. 2005); *Amgen, Inc.*, 95 F.3d at 567; *Oberweis Sec., Inc. v. Inv'rs Ins. Corp.*, 227 F. Supp. 3d 972, 973 (N.D. Ill. 2016); *cf. America's Money Line, Inc. v. Coleman*, 360 F.3d 782, 785 n.1 (7th Cir. 2004).

Next Level's complaint alleges that jurisdiction is proper under 28 U.S.C. § 1332(a) due to the diversity of the citizenship of the parties. However, the complaint did not identify the citizenship of the members of Next Level, LLC. (ECF No. 1, ¶ 5.) At the hearing the court was informed that Next Level has two members, both of whom are citizens of Wisconsin. Therefore, the court is satisfied that complete diversity of citizenship exists.

But diversity jurisdiction also requires an amount in controversy of more than $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). The Court of Appeals for the Seventh Circuit has said, "We have adhered to the rule that the value of the object of the litigation is the 'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the injunction or declaratory judgment." *Coleman*, 360 F.3d at 786.

There are several ways to look at what the object of the present litigation is. In the most direct sense, the object of this litigation is the arbitrator's subpoena. Viewed from this perspective, the amount in controversy may be regarded as the cost to Next Level in complying with the subpoena. Next Level could not offer an estimate what that cost might be, but it is safe to presume it would not exceed $75,000. Thus, the court would not have jurisdiction over this dispute.

Viewed from a different perspective, the object of this litigation is Prudential's dispute with Daniel Fleming and Patrick Maddox. The parties agree that more than $75,000 is at issue in the underlying arbitration. However, Next Level is not subject to that arbitration. Thus, there is no reason to believe that Next Level has anything, much less a sum of more than $75,000, at stake in the arbitration.

But the amount in controversy may also be assessed from the perspective of what is at stake to the other party. Viewed that way, it is reasonable to conclude that Prudential's ability to prove its claim in the arbitration may be impacted by the information it seeks with the subpoena. The court will accept this view, in large part because the parties agree that the present dispute involves at least $75,000. Therefore, the court concludes that it has diversity jurisdiction under 28 U.S.C. § 1332(a).

3. **Nature of Action**

As noted, Next Level initiated this action by way of a complaint seeking declaratory judgment. That struck the court as an unusual way to challenge the validity

of a subpoena, particularly when the FAA provides a specific procedure for enforcing subpoenas. However, because the arbitration is in this district, the distinction proves inconsequential. The court regards Prudential's "Cross Motion to Compel Compliance with Defendants' FINRA Subpoena" (ECF No. 9) as a "petition" under § 7 of the FAA and construes this action as arising under § 7 of the FAA rather than as a matter of declaratory judgment. Construed in this manner, the court concludes that it may resolve the parties' dispute under 28 U.S.C. § 636(b)(1)(A). *See, e.g., COMSAT Corp. v. NSF*, 190 F.3d 269, 274 (4th Cir. 1999); *Sec. Life Ins. Co. of Am. v. Duncanson & Holt (in Re Sec. Life Ins. Co. of Am.)*, 228 F.3d 865, 869 (8th Cir. 2000); *Me. Cmty. Health Options v. Walgreen Co.*, No. 18-mc-0009, 2018 U.S. Dist. LEXIS 214029, at *15 (W.D. Wis. Dec. 20, 2018).

4. **Analysis**

   Section 7 of the Federal Arbitration Act provides:

   The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their

6

punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7.

Given this clear language, there can be no dispute that an arbitrator may compel a non-party witness to appear at a hearing and to bring documents with him. The statute clearly grants an arbitrator that authority. However, the circuit courts of appeal are split as to whether an arbitrator may compel a non-party to produce documents in advance of a hearing.

In a case involving both § 7 of the FAA and § 301 of the Labor Management Relations Act, the Court of Appeals for the Sixth Circuit noted that "the FAA's provision authorizing an arbitrator to compel the production of documents from third parties for purposes of an arbitration hearing has been held to implicitly include the authority to compel the production of documents for inspection by a party prior to the hearing." *Am. Fed'n of TV & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (citing *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42 (M.D. Tenn. 1994); *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241 (S.D. Fla. 1988)). Thus, it held that "under § 301, a labor arbitrator is authorized to issue a subpoena duces tecum to compel a third party to produce records he deems material to the case either before or at an arbitration hearing." *Id.* The Court of Appeals for the Eighth Circuit has also found that the authority to compel pre-hearing production from third-parties was implicit in § 7 and

fostered efficient resolution of disputes through arbitration. *Sec. Life Ins. Co. of Am.*, 228 F.3d at 870-71.

However, the three other courts of appeal to have addressed the issue have disagreed. The Third Circuit, in a decision authored by then-Judge Samuel Alito, disagreed with the "power-by-implication analysis." *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 408 (3d Cir. 2004) (discussing *Security Life Ins. Co. of Am.*, 228 F.3d at 870-71; *Meadows Indemnity Co.*, 157 F.R.D. at 45). It found that, rather than implying that an arbitrator had an unarticulated power, "[b]y conferring the power to compel a non-party witness to bring items to an arbitration proceeding while saying nothing about the power simply to compel the production of items without summoning the custodian to testify, the FAA implicitly withholds the latter power." *Hay Grp.,* 360 F.3d at 408. The court noted that some may believe it preferable policy to afford arbitrators broad subpoena power over non-parties. *Id.* at 409. But "a reasonable argument can be made that a literal reading of Section 7 actually furthers arbitration's goal of 'resolving disputes in a timely and cost-efficient manner.'" *Id.* (quoting *Painewebber Inc. v. Hofmann*, 984 F.2d 1372, 1380 (3d Cir. 1993). The court concluded that such policy decisions are for Congress rather than courts. *Id.* at 409.

The Second Circuit agreed with the Third and found that "[t]he language of section 7 is straightforward and unambiguous. Documents are only discoverable in

arbitration when brought before arbitrators by a testifying witness." *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008).

The Fourth Circuit reached the same conclusion in a decision that pre-dated *Hay*, although it hedged its conclusion. It held that "a federal court may not compel a third party to comply with an arbitrator's subpoena for prehearing discovery, absent a showing of special need or hardship." *COMSAT Corp.*, 190 F.3d at 278. The court did not define "special need" "except to observe that at a minimum, a party must demonstrate that the information it seeks is otherwise unavailable." *Id.* at 276.

The Court of Appeals for the Seventh Circuit has not addressed the question. But district courts within the circuit have agreed with the Second and Third Circuits. *Ware v. C.D. Peacock, Inc.*, No. 10 C 2587, 2010 U.S. Dist. LEXIS 44737, at *7 (N.D. Ill. May 7, 2010); *Matria Healthcare, LLC v. Duthie*, 584 F. Supp. 2d 1078, 1083 (N.D. Ill. 2008). This court, likewise, finds the conclusion of the Second and Third Circuits to be correct. In the face of an unambiguous statute, it is inappropriate for a court to read in an implied power simply because in the court's judgment it may make good sense to include such authority. *See Life Receivables Tr.*, 549 F.3d at 216; *Hay Grp.*, 360 F.3d at 409.

Arbitration is an attractive alternative to litigation in large part because of its circumscribed procedures. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57-58 (1974); *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, 631 F.3d 869, 874 (7th Cir. 2011). When parties agree to settle their disputes through arbitration, it comes with tradeoffs,

9

one of which is foregoing the full panoply of discovery available in litigation. *See COMSAT Corp.*, 190 F.3d at 276 ("The rationale for constraining an arbitrator's subpoena power is clear. Parties to a private arbitration agreement forego certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their disputes."). That is the bargain the parties make when they agree to arbitration; it is the court's obligation to give force to that agreement.

"[R]esponsibility for the conduct of discovery lies with the arbitrators--indeed, for the sake of economy and in contrast to the practice in adjudication, parties to an arbitration do not conduct discovery; the arbitrators do." *CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002). Thus, consistent with § 7, arbitrators may conduct preliminary hearings during which witnesses may be ordered to appear and produce documents. *All. Healthcare Servs. v. Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 811 (N.D. Ill. 2011); *Me. Cmty. Health Options*, 2018 U.S. Dist. LEXIS 214029, at *4 (order granting request to enforce subpoena that included production of documents at hearing); *see also Life Receivables Tr.*, 549 F.3d at 218. In fact, under some circumstances an arbitrator may order a third-party to appear at a hearing with documents and, for the sake of that non-party's convenience, permit the third-party to waive his appearance if he produces the documents as ordered. *Hay Grp.*, 360 F.3d at 413 (Chertoff, J., concurring).

> The subpoena here was issued on October 30, 2018, and instructs Next Level
>
>> to appear telephonically at an evidentiary hearing in the above-captioned matter, which is to be held at a date and time to be determined by agreement of the parties, or as directed by the Panel presiding over this matter. Next Level Planning & Wealth Management, LLC is also required to produce documents within its possession, custody or control in response to the requests on Schedule A attached hereto at the offices of Paduano & Weintraub LLP, 1251 Avenue of the Americas, Ninth Floor, New York, New York 10020, or at a location selected by the Panel, within thirty (30) days of receipt of this Subpoena.

(ECF No. 1-1 at 1.)

Prudential argues that the subpoena is appropriate even under the Second and Third Circuits' reading of § 7 because it compels Next Level to appear at an evidentiary hearing. (ECF No. 10 at 12.) It argues that "[t]he Subpoena issued by the Panel compels Plaintiff 'to appear telephonically at an evidentiary hearing ... [and] to produce documents within its possession, custody or control in response to' Prudential's requests." (ECF No. 10 at 12.) But the subpoena does not require Next Level to produce documents at a hearing; it requires Next Level to produce documents within thirty days of receipt of the subpoena. Although Next Level is also instructed to appear telephonically at an as-yet-unscheduled evidentiary hearing, its obligation to appear at a hearing is independent of its obligation to produce documents within thirty days.

Far from an "absurd outcome," as Prudential argues (ECF No. 10 at 12), the court finds that limiting third-party document production to hearings before an arbitrator serves reasonable policy goals. It is entirely rational to conclude that Congress sought to

limit the circumstances in which a third party who never agreed to be subject to arbitration can be forced to devote the time and expense of compelled disclosure of documents. *See Hay Grp.*, 360 F.3d at 409 ("it is not absurd to read the FAA as circumscribing an arbitration panel's power to affect those who did not agree to its jurisdiction"); *Kennedy v. Am. Express Travel Related Servs. Co.*, 646 F. Supp. 2d 1342, 1345 (S.D. Fla. 2009) ("a textual limit on arbitrators' power is not absurd, it is merely inconvenient; therefore, the plain meaning of the statute must control"). If arbitrators are forced to convene hearings specifically for the purpose of compelling third-party document production, they may be less inclined to issue such subpoenas as a matter of course and may more closely scrutinize whether this is "a proper case," 9 U.S.C. § 7, for a third-party subpoena. Similarly, parties seeking documents are likely to be more circumspect and disinclined to engage in fishing expeditions if a third-party subpoena duces tecum requires appearance at a hearing. *Hay Grp.*, 360 F.3d at 409.

Moreover, it is important to remember that limitations on document production from third-parties is hardly radical. Similar to § 7, for 54 years—from their adoption in 1937 until the 1991 amendments—the Federal Rules of Civil Procedure did not authorize the compelled production of documents from a third party unless related to a hearing or deposition. *Hay Grp.*, 360 F.3d at 407-08.

Finally, the court finds no basis for concluding that a different result is appropriate because Next Level is closely connected to the dispute pending before the FINRA arbitrators. *See Life Receivables Tr.*, 549 F.3d at 217.

**IT IS THEREFORE ORDERED** that the petition to enforce the FINRA arbitration subpoena (ECF No. 9) filed by Pruco Securities LLC and Prudential Insurance Company of America is **denied**.

**IT IS FURTHER ORDERED** that the motion to quash the FINRA subpoena filed by Next Level Planning & Wealth Management, LLC is **dismissed as moot**.

**IT IS FURTHER RECOMMENDED** that Next Level Planning & Wealth Management, LLC's complaint for declaratory judgment be **dismissed as moot** along with this action.

Dated at Milwaukee, Wisconsin this 13th day of February, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge